


FILED

Mar 23 2018, 3:58 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 18S-AD-167

## In re the Adoption of E.B.F.,
## J.W.,
*Appellant (Respondent below),*

—v—

## D.F.
*Appellee (Petitioner below)*

---

Decided: March 23, 2018

Appeal from the Greene Circuit Court, No. 28C01-1501-AD-1
The Honorable Erik C. Allen, Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 28A05-1702-AD-257

---

**Opinion by Justice David**
Chief Justice Rush and Justice Goff concur.

**David, Justice.**

As the destructive tentacles of the substance abuse epidemic continue to reach every corner of our State, Hoosier parents ravaged by addiction—particularly victims of opioid dependency—face difficult decisions to safeguard their children's welfare. Here, a child's quality of life was adversely impacted when addiction afflicted his mother. Hoping to spare her son the impact of her unfortunate circumstance, mother voluntarily agreed to modify custody. Under the agreement, she relinquished primary physical custody and the trial court awarded it to the child's biological father. Mother retained legal custody with some parenting time, but during a period of more than one year, she failed to communicate significantly with her son. As a result, the child's stepmother's petition to adopt was granted without the mother's consent.

We are now asked to determine whether mother's consent was necessary to grant the petition. Finding that the totality of mother's circumstances—her struggles with addiction, her willingness to give up custody, and her good-faith recovery efforts—justified her failure to communicate with her child during that one-year period, and further finding that both father and stepmother's unwillingness to abide by the agreed-upon modification order frustrated mother's limited ability to communicate, we hold that mother's consent was necessary to grant the adoption petition. Accordingly, we reverse the trial court on the consent determination and remand for further proceedings.

# Facts and Procedural History

On November 25, 2003, E.B.F. ("Child") was born out-of-wedlock to J.W. ("Mother") and M.F. ("Father"). Mother and Father were never married, but were in a relationship that ended shortly after Child was born. The separation occurred, in part, due to an incident where Father broke Mother's nose. Mother retained primary custody of Child for the next ten years and Father exercised regular and consistent parenting time, pursuant to the Indiana Parenting Time Guidelines ("IPTG").

In 2005, Father married D.F. ("Stepmother"). Initially, the pattern of abuse continued toward Father's new partner, but to Father's credit, his home-life improved drastically over time. Mother, on the other hand, increasingly had trouble keeping her life together. By 2013, she found herself unemployed and was once again the victim of an abusive relationship. She also struggled with substance abuse and dependence.

Around November 2013, in an effort to minimize Child's exposure to adverse conditions in Mother's home, Child began staying more frequently with Father. On December 12, 2013, Mother and Father filed an Agreed Entry of the Parties, whereby Father was awarded primary custody of Child while Mother retained shared joint legal custody. The agreed-upon modification also awarded Mother parenting time "at such times and upon such conditions as the parties are able to mutually agree." (Appellant's App. Vol. I at 8). Father did not seek Mother's financial support due to her poor financial circumstances. Accordingly, Mother had a $0.00 support obligation. Mother later testified that, at the time of the modification, she "felt it was necessary for [the child's] well-being that he would be at his dad's instead of in the situation that [she] was in." (Tr. Vol. I at 20).

Mother spent meaningful time with Child on Christmas Day 2013, but had no further meaningful contact with Child after that date. She did not send Child letters or birthday cards and was not otherwise involved in Child's scholastic activities. Mother did, however, occasionally run into Child, Father, and Stepmother around town. These encounters included one at a grocery store and another at a school baseball game.

Mother dedicated much of 2014 to recovering, which yielded excellent results. By the fall of that year, Mother had left her abusive partner, gained stable employment, found decent housing, and successfully addressed her drug dependency. Child experienced positive changes too; his behavior, appearance, cleanliness, and school performance all improved substantially.

On January 2, 2015, one year and seven days after Mother's last significant contact, Stepmother filed a Petition for Adoption of E.B.F. Father consented to the adoption, but Mother did not. On August 20, 2015

and October 2, 2015, the trial court held a hearing on whether Mother's consent was required to grant the adoption petition. The trial court issued its ruling on November 25, 2015, finding that Mother's consent was not required because Stepmother had "proven by clear, cogent and indubitable evidence that . . . mother . . . failed . . . to communicate significantly with the child for at least one year from December 25, 2013 until the date [the] Petition was filed." (Appellant's App. Vol. I at 10).

The trial court then held hearings on November 3 and December 21, 2016, to determine whether adoption was in the best interest of the child. On January 13, 2017, the trial court issued its ruling, granting the petition and finding that adoption was, indeed, in the best interest of the child. On February 2, 2017, the trial court issued the Adoption Decree, granting Stepmother's adoption petition and terminating Mother's parental rights. Mother appealed.

In a published opinion, the Court of Appeals affirmed the trial court, finding that "[s]ufficient evidence supported the trial court's findings, and those findings supported the trial court's conclusion that Mother failed without justifiable cause to communicate significantly with Child when she had the ability to do so." *Adoption of E.B.F. v. D.F.*, 79 N.E.3d 394, 401 (Ind. Ct. App. 2017).

Thereafter, Mother sought transfer to this Court. We now grant transfer, thereby vacating the Court of Appeals' opinion. Ind. Appellate Rule 58(A).

## Standard of Review

In family law matters, we generally give considerable deference to the trial court's decision because we recognize that the trial judge is in the best position to judge the facts, determine witness credibility, "get a feel for the family dynamics," and "get a sense of the parents and their relationship with their children." *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind. 2005). Accordingly, when reviewing an adoption case, we presume that the trial court's decision is correct, and the appellant bears the burden of

rebutting this presumption. *In re Adoption of O.R.*, 16 N.E.3d 965, 972–73 (Ind. 2014).

The trial court's findings and judgment will be set aside only if they are clearly erroneous. *In re Paternity of K.I.*, 903 N.E.2d 453, 457 (Ind. 2009). "A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment." *Id.* We will not reweigh evidence or assess the credibility of witnesses. *In re Adoption of O.R.*, 16 N.E.3d at 973. Rather, we examine the evidence in the light most favorable to the trial court's decision. *Id.*

# Discussion and Decision

The overarching question we address is whether Mother's consent was required to grant Stepmother's adoption petition. Stepmother argues that Mother forfeited her right to consent when she failed to communicate with Child for more than one year. Stepmother claims that, given Father's consent, only "a best interest of the child" determination was necessary to grant the petition. The trial court agreed and granted the petition, finding that adoption was in the best interest of the child.

Mother does not challenge the trial court's "best interest" determination.[1] Instead, she argues that she had justifiable cause to not communicate with Child because Father and Stepmother prevented her from doing so. Stepmother responds by arguing that the statute's justifiable excuse clause is inapplicable here because *she* never frustrated Mother's ability to communicate with Child; rather, Child decided on his own that he did not care to communicate with Mother. Stepmother

---

[1] Given that Mother does not challenge the "best interest of the child" determination, we consider only the evidence available to the trial court as a result of testimony taken during the "consent" hearing held on August 20, 2015 and October 2, 2015. Later testimony from the "best interest of the child" hearing was not available to the trial court when it made its consent determination.

reminds us that it is not a custodial parent's obligation to facilitate communication with the non-custodial parent.

We reverse the trial court and find that Mother's consent was necessary to grant the adoption on two grounds: First, although Mother failed to have significant communication with Child for a period of more than one year, her willingness to shield her son from the adverse effects of her addiction, coupled with her good-faith attempt at recovery and noticeable progress, constitute justifiable cause for her failure to communicate. Moreover, Father and Stepmother thwarted whatever occasional attempts Mother made to communicate with Child, in violation of the agreed-upon custody modification order, thus further impeding Mother's ability to communicate with Child.

## I. Mother did not have significant communication with Child for a period of one year.

Although the parties seem to agree on this threshold matter, we briefly address whether Mother's sparse contact with Child throughout 2014 constituted significant contact. We find that it did not.

Indiana law generally provides that a petition for adoption of a child born out of wedlock requires written consent from the mother of the child and, if paternity had been established by a paternity affidavit, written consent from the father is required too. Ind. Code § 31-19-9-1. Parental consent may, however, be dispensed with under certain enumerated circumstances. One such circumstance is where, for a period of at least one year, "[a] parent of a child in the custody of another person . . . fails without justifiable cause to communicate significantly with the child when able to do so . . . ." Ind. Code § 31-19-9-8(a)(2)(A).

A determination on the significance of the communication is not one that can be mathematically calculated to precision. Our Court of Appeals was correct in stating that significance of the communication cannot be measured in terms of units per visit. *In re Adoption of J.P.*, 713 N.E.2d 873, 876 (Ind. Ct. App. 1999). Even multiple and relatively consistent contacts may not be found significant in context. *Id.* But a single significant

communication within one year is sufficient to preserve a non-custodial parent's right to consent to the adoption. *In re Adoption of Subzda*, 562 N.E.2d 745, 749 (Ind. Ct. App. 1990).

Our Court of Appeals correctly determined that Mother's "few, fleeting, and sometimes unintended" contacts with Child were not significant. It is undisputed that on December 25, 2013, Mother spent significant time with Child. However, the record indicates Mother had no encounters with Child of any significance in 2014. Mother was within Child's vicinity during a May 2014 baseball game, but testimony makes clear Mother did not have an opportunity to communicate with Child in any significant way during that encounter. Rather, Mother's communication was with Father, whom she repeatedly, and according to some witnesses, belligerently, screamed at. Child hid behind his father and held on to Father's left side as Mother tried to reach around Father to grab ahold of Child.

Mother's other alleged encounters in 2014—the gas station rendezvous, the encounter at the doctor's office, and the visits to Stepmother's job—all involved either Father or Stepmother, not Child. And the encounter at Walmart, where Mother briefly spoke to Child telling him there were things he did not understand, occurred in August 2015, after Stepmother's Petition for Adoption was filed.[2] The record also indicates that Mother failed throughout 2014 to send letters, birthday cards, valentine's day cards, or any other form of communication that may have been deemed significant. She did not attend Child's 5th grade graduation and seemed unaware of the various activities Child was involved with in school.

Given the evidence, we cannot say that Mother had significant communication with Child during the one-year period following her December 25, 2013 visit.

---

[2] The trial court admitted the testimony on this encounter for the sole purpose of showing that a pattern of continued reluctance to allow Mother parenting time existed even after the petition was filed.

## II. The totality of the circumstances, including the reasons for the initial modification, Mother's ongoing battle with addiction, and her good-faith effort at recovery, constitute justifiable cause for the failure to communicate significantly.

With the first part of our inquiry complete, we resolve whether, despite her failure to communicate significantly with Child during a one-year period, Mother had justifiable cause to forgo communication. We find that she did.

Our case law is devoid of helpful instruction on this particular question; we have yet to address precisely what constitutes a non-custodial parent's justifiable cause to not communicate with Child. In *In re Adoption of O.R.*, 16 N.E.3d at 965, we came close to providing some guidance, but we did not quite reach the question presented: whether unfamiliarity with the judicial system could be deemed a justifiable cause for a father's failure to communicate. Instead, we found that the record lacked support for father's claim; he was a habitual offender who was more than familiar with the court system through his various contacts with it over the years.

Our Court of Appeals' treatment of the issue is marginally more extensive. Several cases have addressed the justifiable cause question. *See In re Adoption of T.W.*, 859 N.E.2d 1215 (Ind. Ct. App. 2006); *Rust v. Lawson*, 714 N.E.2d 769 (Ind. Ct. App. 1999); *In re adoption of Subzda*, 562 N.E.2d 745 (Ind. Ct. App. 1990); and *In re Adoption of Augustyniak*, 505 N.E.2d 868 (Ind. Ct. App. 1987). But, while these cases are helpful, they do not address the full spectrum of justifiable causes available to a non-custodial parent who fails to communicate with her Child. We think the case at bar offers an opportunity to do the right thing as to this particular mother and child, while also providing our trial courts additional instruction on justifiable cause.

Recognizing that a determination on whether a petitioner's burden to prove non-custodial parent's failure to communicate is met is highly dependent upon the facts and circumstances of each particular case, *In re*

*Adoption of Augustyniak*, 505 N.E.2d at 871, we look to the totality of the circumstances to conclude that the case at bar illustrates a non-custodial parent's justifiable cause to not communicate with her child.

First, we highlight that Mother chose to relinquish custody on her own free will, in good-faith, and without representation of counsel. The record demonstrates that Mother maintained primary custody of Child for the first ten years of his life—a significant length of time by any measure. Mother relinquished custody only after recognizing the harm that her personal problems were having on her son. By the end of 2013, Mother's life had spun out of control. She was dependent on various substances, including marijuana, methamphetamine, and oxycodone. Her personal relationships also deteriorated; Mother found herself enthralled once again in an abusive relationship and her two daughters were subject to a CHINS case stemming from sexual abuse by their biological father. She described this period in her life as "[a] nightmare." (Tr. Vol. I at 19). Around November 2013, Mother made a difficult decision to let Child stay with Father, hoping that time away from her would shield him from the destructiveness of her vices. Then, at a December 2013 hearing, Mother took it a step further and agreed to modify custody, giving Father primary custody while retaining legal custody with visitation. Mother was not represented by counsel at that hearing and later testified that she fully expected this to be a temporary arrangement; she figured that when she got back on her feet and got back to the person she was before, she would be able to arrange for split parenting time. We take into account that Mother wanted the best for her child and nothing in the record indicates she intended to abandon him. If she gave up custody, it was only because she understood that, given her circumstances, continued custody and even regular contact would be damaging to Child's welfare.

Also important to a justifiable cause finding in this case is evidence that Mother made a good-faith effort at recovery during the period that she failed to communicate with Child. Mother not only focused on her recovery during that period, she also made significant strides to end the destructive habits that led her to give up custody in the first place. Shortly after giving up custody, Mother ended her abusive relationship, found a job, and secured adequate housing for her and her daughters. By the end

of 2014, she had also ended her dependency on drugs and had a good and stable home-life. Mother turned her life around in what we find was a reasonable amount of time—less than one year. Before the one-year anniversary of the custody modification, Mother seemed on the cusp of being ready to, once again, be a significant part of Child's life, but that possibility was cut short when Stepmother's adoption petition was granted. We are sensitive to Mother's predicament: returning to Child's life too early during her addiction recovery process could have derailed both her own recovery and the child's stability. We, therefore, do not fault Mother for taking a reasonable amount of time to focus on her recovery, even if that effort resulted in a temporary failure to communicate significantly with her child.

Because being around a child while recovering from drug dependency and an abusive relationship may not be in the best interest of either the child or the recovering mother, and because Mother demonstrated that she made a good-faith effort at recovery, with significant progress within a reasonable amount of time, we find that Mother had justifiable cause to not communicate with Child during that one-year period.

## III. Father and Stepmother thwarted communication between Mother and Child.

We're also convinced that Mother's ability to communicate with Child was made impossible when Father and Stepmother, whether intentionally or unintentionally, frustrated Mother's occasional attempts to communicate during her addiction recovery. A custodial parent's efforts to thwart communication between the non-custodial parent and her child are relevant to determining the non-custodial parent's ability to communicate and should be weighted in the non-custodial parent's favor. *E.W. v. J.W.*, 20 N.E.3d 889, 896–97 (Ind. Ct. App. 2014). While it is true that the custodial or prospective adoptive parents are ordinarily under no obligation to arrange or facilitate the non-custodial parent's communication, *In re Adoption of S.W.*, 979 N.E.2d 633, 641 (Ind. Ct. App. 2012), Father assumed the obligation to put forth a good-faith effort in arranging communication when he agreed that Mother was allowed

parenting time "at such times and upon such conditions as *the parties* [were] able to *mutually agree*." (Appellant's App. Vol. I at 8) (emphasis added).  If the modification agreement is to have any meaning, Father's good-faith effort to arrange communication was necessary.

The evidence indicates that neither Father, nor Stepmother, made a good-faith effort to arrange communication between Mother and Child; in fact, they thwarted the few attempts that Mother made at communication.  The record shows Mother told Father and Stepmother various times that she wanted to see Child.  In May 2014, Mother encountered Father at a gas station and was given a phone number to arrange visitation, but Mother's repeated phone calls were not returned.  Then, at the end of May 2014, Mother unsuccessfully tried to communicate with Child at a baseball game.  While we do not condone Mother's behavior at the game—she was reportedly irate—we cite this incident to the extent that it put Father on notice that Mother was trying to communicate with Child.  There were at least two other encounters between Mother and Stepmother: one at a doctor's office and the other at Stepmother's job.  The precise timing of these encounters is not clear, but we know they occurred in 2014 and it is apparent that Mother communicated her desire to see Child at each encounter.  Both Father and Stepmother knew of their obligation to allow Mother to see Child at mutually agreed-upon times, yet they were less than cooperative in arranging those meetings.

Stepmother argues that she and Father did not thwart Mother's ability to communicate because it was Child, not her or Father, who did not want to communicate.  Stepmother's argument is unpersuasive.  Custodial parents cannot defer to a child's decision to forgo communication and then claim that they did not technically thwart communication efforts.  In acquiescing to Child's whims to not communicate, the custodial parents serve as the vehicle to thwart communication.  A child is not in a position of authority to make that decision on his own and we expect custodial parents to instruct children to meet with their non-custodial parents, even if, for whatever reason, they are displeased.  Accordingly, if the non-custodial parent makes a significant attempt to communicate with Child, a custodial parent must take reasonable steps to facilitate that communication, regardless of a Child's desires.  By requiring such

reasonable steps, we guard against the risk that a custodial parent will place undue influence on a child to reject the non-custodial parent's communication as a way to circumvent their obligation to not thwart significant communication attempts.

Furthermore, the record indicates that both Father and Stepmother contributed to frustrating Mother's attempts at communication. Stepmother admitted that Father "refused to let [Mother] see the child." (Tr. Vol. I at 91–92). Stepmother also admitted that "if [Child didn't] want to then [she was] not going to let him" see his mother. (Tr. Vol. I at 91). We cannot allow a custodial-parent to fend off a non-custodial parent's attempts to communicate with her child just long enough to wipe away the non-custodial parent's right to withhold consent to an adoption. Accordingly, we also find that Father and Stepmother's thwarting effectively impeded Mother's ability to communicate with Child.

We make today's decision cognizant that the statute's design tries to limit an absent parent's ability to thwart potential adoptive parents' efforts to provide a settled environment, *In re Adoption of J.P.*, 713 N.E.2d 873, 876 (Ind. Ct. App. 1999), but that is not what is happening here. We're not dealing with a mother who purposefully sought to abandon her child. She maintained primary custody of her child for nearly all of his life—ten years—when she realized that her life had taken a turn for the worst and recognized that continued custody would be detrimental to the child's well-being. She voluntarily agreed to let Father take the "driver's seat" while she focused on recovery, hoping that she may, in the future, continue being a meaningful part of her child's life. She made a tough choice; one that was made voluntarily, with the best interest of the child in mind, and with no intent to abandon Child.

With today's decision, Child remains where he should be: in Father's custody. Father and Stepmother's tremendous work rehabilitating a child who undoubtedly suffered the impact of his mother's addiction does not go unnoticed. By all accounts, Child made appreciable and much-needed progress while in Father and Stepmother's care. He is no longer the shy, nervous, or skittish boy he once appeared to be. He is happy, excelling in school, and has every resource available to ensure his success into young

adulthood. Father and Stepmother took excellent care of Child's needs when he needed it most and will continue to be an integral and necessary part of Child's life, providing care in the foreseeable future. Today, we merely preserve Mother's opportunity to reestablish her relationship with her child, which we are certain is in the best interest of both child and the recovering mother.

# Conclusion

In sum, we find that the totality of the circumstances—Mother's struggles with addiction, her willingness to give up custody after ten years of caregiving, and her good-faith recovery efforts—justify Mother's failure to communicate with her child during that one-year period. We further find that Father and Stepmother's thwarting of Mother's occasional attempts to communicate with Child, in violation of the agreed-upon custody modification order, frustrated Mother's ability to communicate. Accordingly, we hold that Mother's consent was necessary to grant Stepmother's adoption petition. We reverse the trial court on its consent determination and remand for further proceedings.

Rush, C.J., and Goff, J., concur.
Slaughter, J., dissents with separate opinion in which Massa, J., joins.

ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Ashley M. Dyer
Dyer Law, LLC
Linton, Indiana

**Slaughter, Justice, dissenting.**

I respectfully dissent from the Court's decision to grant transfer in this contested-adoption case and from its resolution of the merits.

The Court holds that Mother was justified in not communicating with Child for more than a year because (1) Father and Stepmother made it impossible for Mother to do so and (2) Mother was preoccupied during that time as she was recovering from drug dependency and breaking free of an abusive relationship. As explained below, I am unable to join the Court's opinion because I believe both its grounds for reversal lack merit.

On the first issue, there was no clear error below that warrants this Court's reversal. The evidence adduced in the trial court amply supports that court's findings, and its findings amply support its judgment. The trial court specifically considered Mother's allegation that the custodial parents were interfering with her access to Child. After considering that allegation and competing evidence and weighing witness credibility, the trial court found otherwise—a quintessential fact-finding exercise well within its prerogative.

Could the trial court have reached a different conclusion based on the evidence it heard? Certainly. But that is the wrong question for a reviewing court to pose. Under the applicable standard of review, it is immaterial whether the evidence might have supported the factfinder's reaching a different result. The right question is whether the record entitled the factfinder to reach the result it did. In my view, the Court of Appeals asked the right question and, in so doing, got the right answer—that ample evidence supports the trial court's three key findings:

- Mother knew how to communicate with Child.

- Neither Father nor Stepmother denied Child contact with Mother.

- Mother made minimal efforts to communicate with Child for over a year.

These findings, in turn, support the trial court's conclusion that Father and Stepmother did not impede communication between Mother and Child.

Under the controlling statute, Mother's lack of "justifiable cause to communicate significantly with the child" for at least a year "when able to do so", Ind. Code § 31-19-9-8(a)(2)(A), deprived her of the legal right to consent to Child's adoption. That was the trial court's considered judgment. I would affirm that judgment and not disturb the Court of Appeals' decision upholding it.

On the second issue, the Court *sua sponte* decides a new question of law that Mother did not raise below and thus was never briefed: Does attending to personal circumstances to rehabilitate one's suitability as a parent justify the lack of significant communication with one's child for more than a year? There may be good reason for concluding, on an adequately developed record and after full briefing by the parties, that the answer should be yes. But I would not hold that the trial court abused its discretion here based on a legal argument the trial court never heard. Because Mother did not present this argument to the trial court, I would not afford her relief under it.

For these reasons, I respectfully dissent from the Court's decision.

Massa, J., concurs.