FILED

Jun 21 2019, 7:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Elizabeth M. Smith
Poynter & Bucheri, LLC
Mooresville, Indiana

ATTORNEY FOR APPELLEE

Glen E. Koch, II
Boren, Oliver & Coffey, LLP
Martinsville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re the Adoption of: C.P.,
Minor Child

J.P.,

*Appellant*,

v.

M.W.,

*Appellee*.

June 21, 2019

Court of Appeals Case No.
18A-AD-2947

Appeal from the Hendricks
Superior Court

The Honorable Robert W. Freese,
Judge

Trial Court Cause No.
32D01-1805-AD-24

**Brown, Judge.**

J.P. ("Stepmother") appeals from the trial court's denial of her petition for adoption. We affirm.

## Facts and Procedural History

C.P. ("Child") was born to Co.P. ("Father") and M.W. ("Biological Mother") in December 2013. The Department of Child Services ("DCS") became involved in 2015 when Child was one year old due to Biological Mother's drug use. Paternity was established during the DCS case. Biological Mother's sister was given temporary custody of Child, and Father was later awarded physical custody of Child. DCS closed its case in January 2017. On May 18, 2018, Stepmother filed a petition for adoption alleging that she was twenty-three years old; she and Father were married in August 2017; Biological Mother has not consented to the adoption and her consent is not required pursuant to Ind. Code § 31-19-9-8(a)(1), (2), and (11)[1]; Father had consented to the adoption;

---

[1] Ind. Code § 31-19-9-8 provides:

> (a) Consent to adoption, which may be required under section 1 of this chapter, is not required from any of the following:
>
> > (1) A parent or parents if the child is adjudged to have been abandoned or deserted for at least six (6) months immediately preceding the date of the filing of the petition for adoption.
> >
> > (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
> >
> > > (A) fails without justifiable cause to communicate significantly with the child when able to do so; or
> > >
> > > (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.
> >
> > * * * * *
> >
> > (11) A parent if:

Child resided with her and Father for the prior two years; and there is a paternity matter regarding Child in Morgan County under cause number 55C01-1607-JP-261 ("Cause No. 261") and a zero-dollar support order was in effect under that cause.[2]

[3] On October 23, 2018, the court held a hearing at which Stepmother was present with counsel and Biological Mother appeared *pro se*. Father testified that DCS became involved because Biological Mother "had drug use in his room at the house he was in" and Child was one year old at that time. Transcript Volume 2 at 5-6. When asked "was [Biological Mother] having parenting time with" Child during the time DCS was involved, he replied "not at all" and indicated she was not making requests for parenting time. *Id*. at 6. When asked the last time Biological Mother had contact with Child, he answered "I believe it was January after he turned two . . . ." *Id*. He indicated Biological Mother has not

---

> (A) a petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; and
>
> (B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent.
>
> * * * * *
>
> (b) If a parent has made only token efforts to support or to communicate with the child the court may declare the child abandoned by the parent.

[2] In Cause No. 261, a petition for decree of paternity was filed on July 5, 2016; an order was issued on October 12, 2016, awarding custody to Father and ordering that Biological Mother pay zero dollars in child support; an entry in the chronological case summary on December 21, 2016, indicates a hearing was held and "Court modifies parenting time to be at father's discretion"; on February 23, 2018, Biological Mother filed a motion requesting visitation with Child and alleging that she reached out to Father and was ignored; an entry in the chronological case summary on May 3, 2018, states "Notice of Court Ordered Drug Screen Results"; and an entry on June 8, 2018, states "Venued out to Hendrick County to be consolidated with their case 32D01-1805-AD-000024." Chronological Case Summary, Cause No. 261.

made efforts to contact him to arrange parenting time since January 2016, he had not received any letters or birthday or Christmas cards for Child, and Biological Mother did not actively participate in the DCS matter. He indicated there was "a zero-dollar child support order" and he did not receive any financial assistance from Biological Mother. *Id*. at 7. When asked, "[s]ince the last time that she communicated with [Child] in 2016, when did you first hear anything from [Biological Mother] again," he answered "once before DCS closed out, asking if she could see him without them knowing about it but . . . ," and when asked "[y]ou said before DCS closed out so that would have been prior to 2017," he replied "[y]es." *Id*. at 7-8. He indicated that Biological Mother requested parenting time under Cause No. 261 in February 2018. He stated he had been married to Stepmother for two years and that she had been in Child's life "since the beginning of the DCS case when we started dating." *Id*. at 9.

[4]     Stepmother testified that she has been involved in Child's life for several years, has had the opportunity to bond with him, and lived with Child, Father, and their three-month-old son. When asked if she was aware of any effort by Biological Mother to see Child, she replied "one" and "[i]t was before DCS closed out . . . she was advised to talk to DCS about it." *Id*. at 11. She testified Child "had a hard time bonding with females" and "I think he is great now." *Id*. at 12.

[5]     Biological Mother testified:

I don't, I just really wanna see [Child] and that why I put in to Court, that's why I did the court date in Martinsville and I don't want to take him away from anything cause I am really glad he is doing good and I struggled for a long time with drugs but I am not anymore and I am doing really good, you know and I have son too, he just turned a year and I want him to be apart [sic] of his life, and I really regret all the stuff that, you know, I couldn't get better sooner but I just, I want the chance to be in his life again.

*Id*. at 14-15. She presented a letter from her probation officer stating:

[Biological Mother] was sentenced on November 1, 2017. She was ordered to 365 days to serve. She had 99 actual days credit of jail time and then was placed on home detention for 81 actual days. She completed her home detention successfully. On January 29, 2018, she began her probation time of 545 days. [She] has not had any violations since November 1, 2017. She is an active participant in our woman's group What Was I Thinking. She is currently employed . . . in Spencer, Indiana.

Exhibit 2. The court asked Biological Mother why she did not have contact with Child, and she testified "I was really trying to get . . . I was on house arrest for a little while and I wanted to get off house arrest and I wanted to get things right," "I was having a hard time getting my life on track and I just wanted to have everything together cause I didn't want to take any chances, you know, going back," and "I really regret that it took this long though." *Id*. at 15-16. When asked "[w]hen you say you didn't want to take chances of going back, you mean going back to," she answered "[n]ot being around him, I just wanted to make sure that everything would be ok." *Id*. at 16. Biological Mother argued "I don't want her to adopt him, you know, I'd rather, I wanna have visits with him and even if it is supervised at first, I just want to be a part of his

life." *Id*. at 17. The court took the matter under advisement and also stated "if I grant the petition it . . . pretty much does away with" Cause No. 261 and asked, "if I deny the petition, what's the status of" that cause, and Stepmother's counsel replied there had been a hearing in that cause "and it was ordered that she under go [sic] drug testing and those results have come in and there has been no action since that time as the adoption was filed." *Id*. at 18.

[6] On November 9, 2018, the trial court issued an order denying the petition for adoption which provided:

> 5. [Stepmother] did not prove by clear and convincing evidence that for a period of at least one year:
>
>> A. [Biological Mother] failed without justifiable cause to communicate significantly with [Child] when able to do so.
>>
>> B. [Biological Mother] knowingly failed to provide for the care and support of [Child] when able to do so as required by law or judicial decree.
>
> 6. [Biological Mother's] testimony was convincing and the Court finds that due to her substance abuse, criminal issues, and other personal issues, it was (as she testified) in the best interest of [Child] that she not have any contact until she solved her issues.
>
> 7. [Biological Mother] was not ordered to pay support and did not have the means to do so.
>
> 8. Prior to the filing of the Petition for Adoption, [Biological Mother] filed a request for parenting time in the Paternity case related to Father, [Biological Mother], and the Child.
>
> 9. The Court finds that [Biological Mother] had a justifiable cause to not significantly communicate with [Child].

10. The parent/child relationship between [Biological Mother] and [Child] can be re-established.

11. It is not in the best interest of [Child] that the adoption be granted.

Appellant's Appendix Volume 2 at 8-9. Stepmother filed a motion to reconsider which the court denied.

## *Discussion*

In family law matters, we generally give considerable deference to the trial court's decision because we recognize that the trial judge is in the best position to judge the facts, determine witness credibility, and obtain a feel for the family dynamics and a sense of the parents and their relationship with their children. *E.B.F. v. D.F.*, 93 N.E.3d 759, 762 (Ind. 2018). Accordingly, when reviewing an adoption case, we presume that the trial court's decision is correct, and the appellant bears the burden of rebutting this presumption. *Id.* When reviewing the trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion. *In re Adoption of T.L.*, 4 N.E.3d 658, 662 (Ind. 2014). The trial court's findings and judgment will be set aside only if they are clearly erroneous. *E.B.F.*, 93 N.E.3d at 762. A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* We will not reweigh evidence or assess the credibility of witnesses. *Id.* Rather, we examine the evidence in the light most favorable to the trial court's decision. *Id.*

[8] Ind. Code § 31-19-11-1 provides that the trial court shall grant a petition for adoption if it hears evidence and finds in part that the adoption requested is in the best interest of the child and "proper consent, if consent is necessary, to the adoption has been given." A petition to adopt a child may be granted only if written consent to adoption has been executed by the child's mother. *See* Ind. Code § 31-19-9-1. However, Ind. Code § 31-19-9-8(a) provides that consent to adoption "is not required from any of the following":

> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>
>> (A) fails without justifiable cause to communicate significantly with the child when able to do so; . . . .

If a petition for adoption alleges that a parent's consent to adoption is unnecessary under Ind. Code § 31-19-9-8(a)(2) and the parent files a motion to contest the adoption, the "petitioner for adoption has the burden of proving that the parent's consent to the adoption is unnecessary under IC 31-19-9-8." *See* Ind. Code § 31-19-10-1.2(a). The party bearing the burden of proof must prove the party's case by clear and convincing evidence. Ind. Code § 31-19-10-0.5.

[9] Stepmother contends that Biological Mother's failure to communicate with Child for a period of more than one year was not justified and therefore her consent to the adoption is not required. She asserts that the evidence presented led to only one conclusion based on the totality of the circumstances and the trial judge reached an opposite conclusion. She argues that Biological Mother's choices and actions do not excuse failing to make a single effort to

communicate with Child. Stepmother cites Ind. Code § 31-19-9-8(a)(2)(A) and argues that Biological Mother was not even placed on house arrest until November 2017, which was well over a year after her last contact with Child, that Child has no existing relationship with Biological Mother having been only one year old at the time of removal, and that Child has known no mother other than Stepmother. She argues "the only logical conclusion is to find that [Biological Mother's] consent is not required based on her failure without justifiable cause to communicate with [Child] from January, 2016 until her attempt to obtain parenting time by filing in the JP cause February, 2018" and "[t]o find otherwise would circumvent the purpose of I.C. 31-19-9-8, allowing parents to make the choice of drugs over their children for lengthy periods of time with no efforts at rehabilitation until they thought it appropriate to take note of their children once again." Appellant's Brief at 8. She also argues that adoption by her is in Child's best interest and a parent's desire is not sufficient to overcome other factors in assessing a child's best interest.

[10] Biological Mother maintains that she had justifiable cause to not significantly communicate with Child and the court specifically found that her relationship with Child could be reestablished. She maintains that she struggled with substance abuse, that she had criminal trouble, and that she "used her time on probation to better herself and to make sure she was okay to reunify with her child and then attempted to do so and Father and Step-Mother filed the adoption." Appellee's Brief at 10. She argues that adoption is not in the best interest of Child because she had worked on her substance abuse issues and was

attempting to reestablish contact and the court found that the parent-child relationship could be reestablished.

[11] The burden was on Stepmother, as the petitioner for adoption, to prove that the requirements of Ind. Code § 31-19-9-8(a)(2) were satisfied and that Biological Mother's consent was unnecessary. *See* Ind. Code § 31-19-10-1.2. The evidence most favorable to the trial court's decision reveals that DCS became involved in 2015 when Child was one year old and that the court issued an order in October 2016 in Cause No. 261 awarding custody to Father and ordering that Biological Mother pay zero dollars in child support. According to Father and Stepmother, at some point prior to the closure of the DCS case in 2017, Biological Mother requested to see Child and was advised to talk to DCS about it. In February 2018, Biological Mother requested visitation with Child under Cause No. 261. Stepmother filed her petition for adoption on May 18, 2018. Biological Mother testified as to her struggle with drugs, that she is doing well, and that she has another child who was one year old. She presented a letter indicating she had been sentenced on November 1, 2017, and had ninety-nine actual days credit of jail time and then was placed on home detention for eighty-one actual days. Biological Mother expressed her willingness to participate in supervised visitation with Child. The trial court specifically found that Biological Mother's testimony was convincing, that she had filed a request for parenting time prior to the filing of the petition for adoption, the parent-child relationship between Biological Mother and Child can be reestablished, and it is not in Child's best interest that the adoption be granted. The trial judge

is in the best position to judge the facts, and we will not reweigh evidence or assess the credibility of the witnesses. We cannot say under these circumstances that Stepmother has met her burden to overcome the presumption the trial court's decision is correct or that the evidence leads to but one conclusion and the trial court reached the opposite conclusion.

[12] For the foregoing reasons, we affirm the judgment of the trial court.

[13] Affirmed.

May, J., and Mathias, J., concur.