FILED

Dec 09 2020, 9:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| James A. McEntarfer | Marylyn K. L. Ernsberger, Esq. |
| McEntarfer Law Office | Ernsberger & Helmer, P.C. |
| Angola, Indiana | Angola, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| M.M., <br> *Appellant-Respondent,* <br><br> v. <br><br> A.C., <br> *Appellee-Petitioner* | December 9, 2020 <br><br> Court of Appeals Case No. 20A-AD-1241 <br><br> Appeal from the Steuben Circuit Court <br><br> The Honorable Allen N. Wheat, Judge <br><br> Trial Court Cause Nos. 76C01-1911-AD-019 76C01-1911-AD-020 |

**May, Judge.**

[1] M.M. ("Mother") appeals the trial court's grant of petitions from A.C. ("Stepmother") to adopt L.E. and I.E. (collectively, "Children"). Mother presents two issues for our review, which we consolidate and restate as whether Stepmother presented sufficient evidence to prove Mother was able to communicate with Children. We affirm.

# Facts and Procedural History

[2] Mother and N.E. ("Father") divorced on August 14, 2015. Two children had been born of the marriage – I.E., born December 19, 2012, and L.E., born November 27, 2013. At the time of dissolution, the trial court awarded Father sole physical and legal custody and granted Mother parenting time. Children have been in Father's care since the dissolution.

[3] Father married Stepmother on January 3, 2017. Mother has a substance abuse problem and mental health issues, and she attempted rehabilitation on multiple occasions. On November 8, 2019, Stepmother filed petitions to adopt Children. At a pretrial conference on January 8, 2020, Mother objected to the adoptions, and the trial court appointed her counsel.

[4] On June 1, 2020, the trial court held a hearing on Stepmother's petitions for adoption. Mother did not attend the hearing, but her counsel was present. Stepmother presented evidence that Mother had not communicated with Children since Easter 2016 and that Stepmother and Father had not prohibited Mother from visiting Children. On June 4, 2020, the trial court entered orders granting Stepmother's petitions to adopt Children.

# Discussion and Decision

[5] Our standard of review for adoption determinations is well-settled:

> "When reviewing adoption proceedings, we presume that the trial court's decision is correct, and the appellant bears the

burden of rebutting this presumption." We generally give considerable deference to the trial court's decision in family law matters, because we recognize that the trial judge is in the best position to judge the facts, determine witness credibility, "get a feel for the family dynamics," and "get a sense of the parents and their relationship with their children." We will not disturb the trial court's ruling "unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion." The trial court's findings and judgment will be set aside only if they are clearly erroneous. "A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment." "We will neither reweigh the evidence nor assess the credibility of witnesses, and we will examine only the evidence most favorable to the trial court's decision."

*In re Adoption of O.R.*, 16 N.E.3d 965, 972-73 (Ind. 2014) (citations omitted). Mother does not challenge any specific findings of the trial court, so we must accept them as true. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct.").

[6] Generally, a trial court may grant a petition for adoption only if both the mother and father of the child consent. Ind. Code § 31-19-9-1(a)(2). However, Ind. Code § 31-19-9-8 provides consent to an adoption is not required from:

> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>
>> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or

(B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

Regarding the level of Mother's communication with Children, the trial court found and concluded:

A. FINDINGS OF FACT

\* \* \* \* \*

19. [Mother] has had no personal contact with [L.E.], or attempted any other manner of communication with [L.E.], since Easter of 2016.

20. [Stepmother] has in no manner prevented [Mother] from contacting [L.E.].

\* \* \* \* \*

B. CONCLUSIONS OF LAW

\* \* \* \* \*

4. The Court concludes that [Stepmother] has proven by clear and convincing evidence that [Mother] without good cause has failed to communicate significantly with [L.E.] for a period of at least one (1) year.

5. There were no in-person visits. There was no written correspondence. There was no telephonic communication.

> There was no electronic correspondence. There simply was no attempt by [Mother] to communicate with [L.E.] by any means.

(Appellant's L.E.[1] App. Vol. II at 16-18) (formatting in original). While Mother does not deny that she did not communicate significantly with Children, Mother contends Stepmother did not present sufficient evidence that Mother was able to communicate significantly with Children.

[8] Mother likens the facts here to those in *In re the Adoption of E.B.F.*, 93 N.E.3d 759 (Ind. 2018). In *E.B.F.*, the trial court granted the stepmother's petition to adopt E.B.F. based, in part, on the mother's failure to significantly communicate with the child without justifiable cause. *Id.* at 761. The child was born out of wedlock to the mother and the father, and the mother retained primary custody of the child for the first ten years of the child's life. *Id.* Two years after the child's birth, the father married the stepmother. *Id.* In November 2013, the mother and the father entered an agreed entry wherein mother relinquished physical custody to father because mother was struggling with substance abuse and an abusive relationship. *Id.*

[9] The mother saw E.B.F. on December 25, 2013, and "had no further meaningful contact with [E.B.F.] after that date." *Id.* On January 2, 2015, the stepmother filed a petition to adopt E.B.F. and mother appeared in court to indicate she did

---

[1] There are two Appellant's appendices, one for each child. The trial court issued orders for each child as well, and the relevant language is identical. We will quote from the order regarding L.E. unless otherwise specified.

not consent to E.B.F.'s adoption. *Id*. at 762. The mother attended the two fact-finding hearings regarding whether the mother's consent was required for E.B.F.'s adoption. On November 25, 2015, the trial court issued an order concluding that mother's consent was not required because the stepmother had "proven by clear, cogent, and indubitable evidence . . . mother . . . failed . . . to communicate significantly with the child for at least one year[.]" *Id*. (quoting record). On February 2, 2017, the trial court granted stepmother's petition to adopt E.B.F. and the mother subsequently appealed. *Id*.

[10] Our Indiana Supreme Court granted transfer and considered the issue of whether the mother failed to significantly communicate with E.B.F. without justifiable cause. *Id*. at 763. The parties agreed, and our Indiana Supreme Court held, that mother did not communicate significantly with child during the relevant time period. *Id*. However, when examining the totality of the circumstances, our Indiana Supreme Court held that mother's consent was required for E.B.F.'s adoption because "the case at bar illustrates a non-custodial parent's justifiable cause to not communicate with her child." *Id*. at 765. To support its holding, the Court noted:

> First, we highlight that Mother chose to relinquish custody on [sic] her own free will, in good-faith, and without representation of counsel. The record demonstrates that Mother maintained primary custody of Child for the first ten years of his life - a significant length of time by any measure. Mother relinquished custody only after recognizing the harm that her personal problems were having on her son. By the end of 2013, Mother's life had spun out of control. She was dependent on various substances, including marijuana, methamphetamine, and

oxycodone. Her personal relationships also deteriorated; Mother found herself enthralled once again in an abusive relationship and her two daughters were subject to a CHINS case stemming from sexual abuse by their biological father. She described this period in her life as "[a] nightmare." (Tr. Vol. I at 19). Around November 2013, Mother made a difficult decision to let Child stay with Father, hoping that time away from her would shield him from the destructiveness of her vices. Then, at a December 2013 hearing, Mother took it a step further and agreed to modify custody, giving Father primary custody while retaining legal custody with visitation. Mother was not represented by counsel at that hearing and later testified that she fully expected this to be a temporary arrangement; she figured that when she got back on her feet and got back to the person she was before, she would be able to arrange for split parenting time. We take into account that Mother wanted the best for her child and nothing in the record indicates she intended to abandon him. If she gave up custody, it was only because she understood that, given her circumstances, continued custody and even regular contact would be damaging to Child's welfare.

Also important to a justifiable cause finding in this case is evidence that Mother made a good-faith effort at recovery during the period that she failed to communicate with Child. Mother not only focused on her recovery during that period, she also made significant strides to end the destructive habits that led her to give up custody in the first place. Shortly after giving up custody, Mother ended her abusive relationship, found a job, and secured adequate housing for her and her daughters. By the end of 2014, she had also ended her dependency on drugs and had a good and stable home-life. Mother turned her life around in what we find was a reasonable amount of time - less than one year. Before the one-year anniversary of the custody modification, Mother seemed on the cusp of being ready to, once again, be a significant part of Child's life, but that possibility was cut short when Stepmother's adoption petition was granted. We

are sensitive to Mother's predicament: returning to Child's life too early during her addiction recovery process could have derailed both her own recovery and the child's stability. We, therefore, do not fault Mother for taking a reasonable amount of time to focus on her recovery, even if that effort resulted in a temporary failure to communicate significantly with her child.

Because being around a child while recovering from drug dependency and an abusive relationship may not be in the best interest of either the child or the recovering mother, and because Mother demonstrated that she made a good-faith effort at recovery, with significant progress within a reasonable amount of time, we find that Mother had justifiable cause to not communicate with Child during that one-year period.

*Id.* The Court also noted that the father and stepmother thwarted communication between mother and E.B.F. during the relevant time. *Id.*

[11]   Mother contends the holding in *E.B.F.* supports her argument that "the trial court's findings of Biological Mother having been for many years being [sic] plagued with being addicted to drug, reflect a justifiable cause for Biological Mother's failure to communicate with [Children]." (Br. of Appellant at 14.) Mother's addiction to drugs is the only similarity between the facts here and those in *E.B.F.* First, Mother did not attend the adoption hearing; the mother in *E.B.F.* attended all relevant hearings. Following the dissolution, Mother never had sole, primary custody of Children; the mother in *E.B.F.* had primary custody of E.B.F. for ten years. Stepmother presented evidence that Mother was "in and out of rehab and doesn't stay there, very long." (Tr. Vol. II at 15.) Mother admits in her brief that she "still has addiction and drug problems[.]"

(Br. of Appellant at 14.)  In contrast, the mother in *E.B.F.* entered and successfully completed a drug rehabilitation program during the year she did not significantly communicate with E.B.F.  Finally, here Stepmother testified that she was not "prohibiting [Mother] to be able to see the children . . . [or] any contact or phone calls . . with the children[.]"  (Tr. Vol. II at 17.)  *E.B.F.* does not control here.

[12]  Stepmother presented evidence that Mother last saw Children on Easter 2016, and had not called, visited, or sent birthday or holiday cards or presents since that time.  Stepmother testified that she and Father allowed Children to visit with their Maternal Grandmother, but Mother did not visit with Children at those times.  Stepmother testified that she and Father were not prohibiting communication between Mother and Children.  Based thereon, we conclude Stepmother presented sufficient evidence to prove that Mother failed without justifiable cause to communicate significantly with Children.[2]  *See In re Adoption of S.W.*, 979 N.E.2d 633, 641 (Ind. Ct. App. 2012) (father's consent for child's

---

[2] Mother's argument makes much ado about whether Stepmother proved Mother was *able* to communicate with Children.  Mother's argument puts form before substance, as the case she relies upon equates "justifiable cause" with "ability to communicate."  *See E.B.F.*, 93 N.E.3d at 767 ("[T]he totality of the circumstances . . . *justify Mother's failure to communicate* with her child during that one-year period. We further find that Father and Stepmother's thwarting of Mother's occasional attempts to communicate with Child, in violation of the agreed-upon custody modification order, *frustrated Mother's ability to communicate.*") (emphasis added).  Further, Mother argues the trial court erred when it did not conclude that she was able to communicate with Children in its order.  However, she did not cite any case law indicating that such language was a requirement, and thus that issue is waived.  *See Srivastava v. Indianapolis Hebrew Congregation, Inc.*, 779 N.E.2d 52, 55 n.1 (Ind. Ct. App. 2002) (failure to present cogent argument on appeal can result in waiver of issue).  We can see no other conclusion to be made from the evidence presented, and Mother has not demonstrated the trial court erred.

adoption not required based on father's failure without justifiable cause to communicate significantly with child during relevant time frame).

# Conclusion

[13] Stepmother presented sufficient evidence to prove Mother failed without justifiable cause to communicate with Children during the relevant time period. Therefore, Mother's consent was not required for Stepmother's adoption of Children. Accordingly, we affirm the judgment of the trial court.

[14] Affirmed.

Kirsch, J. and Bradford, C.J., concur.