## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision is not binding precedent for any court and may be cited only for persuasive value or to establish res judicata, collateral estoppel, or law of the case.




FILED

Sep 11 2024, 9:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

### C.T.,
*Appellant-Respondent*

v.

### D.W.,
*Appellee-Petitioner*

---

September 11, 2024

Court of Appeals Case No.
24A-AD-964

Appeal from the Montgomery Superior Court

The Honorable Daniel G. Petrie, Judge

Trial Court Cause No.
54D02-1808-AD-32

---

**Memorandum Decision by Judge Bailey**
Chief Judge Altice and Judge Mathias concur.

**Bailey, Judge.**

# Case Summary

C.T. ("Father") appeals the trial court's grant of a petition to adopt N.X.T. ("Child") filed by D.W. ("Stepfather"). We affirm.

# Issues

Father raises three issues, which we revise and restate as the following two issues:

1. Whether the trial court abused its discretion when it ultimately determined that Father's consent to the adoption was irrevocably implied despite an earlier finding that it was not.

2. Whether the court abused its discretion when it determined that the adoption was in Child's best interests.

# Facts and Procedural History

Father and S.W. ("Mother") were in a relationship. Mother gave birth to Child on May 19, 2013, and Father signed a paternity affidavit identifying himself as Child's biological father. Sometime in 2014, Mother and Father terminated their relationship. Father then, *pro se*, filed a paternity action in juvenile court requesting parenting time with Child. Father was granted parenting time and ordered to pay sixty-one dollars per week in child support. Father executed supervised parenting time with Child and then moved to unsupervised

parenting time. But the visits ultimately stopped.[1] Mother married Stepfather on May 7, 2017. Father continued to pay child support.

[4] On August 1, 2018, Stepfather filed a petition to adopt Child. In that petition, Stepfather asserted that Father's consent was not required because he had abandoned Child for at least six months, had failed to communicate significantly with Child for more than one year, and was unfit to be a parent. Contemporaneous with the petition, Stepfather filed Mother's consent to the adoption.

[5] After Stepfather filed his petition, the Court Clerk sent Father a Notice of Adoption. In that notice, Father was advised that, if he wanted to contest the adoption, he "must file a motion to contest the adoption . . . not later than thirty (30) days after the date of service of this notice." Appellant's App. Vol. 2 at 17. Father did not receive service of the petition or notice at that time, and they were returned to the sender as "undeliverable as addressed." *Id*. at 18. Stepfather then refiled his petition the following year, and Father was served with the petition and accompanying notice on October 2, 2019.

[6] On November 7, Stepfather filed a motion in which he asked the court to determine that Father's consent was irrevocably implied. In particular, Stepfather asserted that Father's "time to contest the adoption expired on

---

[1] Mother contends that Father last visited with Child in 2015; Father maintains that he visited with Child until 2017.

November 1, 2019," but that Father had failed to contest the adoption or take any other action prior to that date. *Id*. at 28. In a docket entry, the court noted that "the Motion for Consent shall be denied." *Id*. at 4.

[7] No action was taken on the petition for almost four years. According to Stepfather, "COVID more or less hit," he never "got a court date," and he "just kind of let it stall out at the time." Tr. at 75. On May 11, 2023, Stepfather filed a motion requesting a hearing on his adoption petition. Father then filed a motion for change of judge and asserted that the judge had "represented [Mother]" in the paternity case. Appellee's App. Vol. 2 at 84. The trial court granted Father's motion, and a special judge was appointed.

[8] The court held a hearing on Stepfather's petition on February 14, 2024, to determine "issues of both consent and best interests." Tr. at 18. During the hearing, Father acknowledged that he had received service of the adoption petition in 2019 but believed it meant that Child had "already been adopted" and that his "rights were gone." *Id*. at 27, 52. Father also argued that, after visits with Child stopped, he had attempted to contact Mother but that Mother had "blocked his access to her[.]" *Id*. at 8. He also asserted that Mother had blocked all forms of communication from his new wife and his parents. Father maintained that, when he asked a "child support officer" about visitation, the officer informed him that he either needed to hire an attorney or write a letter to the court. *Id*. at 28. Father asserts that he wrote a letter to the court in 2018, and that he "never got anything back." *Id*. at 29.

[9]     Mother testified that she has not heard from Father in "almost five years" since Stepfather had filed the adoption petition. *Id*. at 81. She also testified that Father last saw Child in May of 2015 and has had no "calls [or] anything like that" with Child since that time. *Id*. at 85. Mother also admitted that there was a time when she had blocked Father from contacting her via social media but that he "was unblocked" before Father started visiting with Child. *Id*. at 86. She further testified that, while she had moved more than once and obtained a new cell phone number, she had always notified the child support office of those changes. Mother acknowledged that Father had continued to consistently pay child support.

[10]    Following the hearing, the parties submitted additional briefs. In his brief, Stepfather asserted that Father's consent was not required because he had irrevocably consented by failing to contest the adoption within thirty days of receiving the petition. In particular, Stepfather asserted that, despite having "4 years to respond," Father "has failed to do so, to this day." Appellant's App. Vol. 2 at 33. Stepfather also asserted that the adoption was in Child's best interests because Child is "stable" with Stepfather and because visitation with Father would be "a traumatic change." *Id*. at 35.

[11]    Father responded and asserted that the initial judge had made a docket entry denying Stepfather's motion that Father's consent was irrevocably implied and that the "minute entry is legally binding." *Id*. at 37. He also asserted that adoption was not in Child's best interests because Child should be able "to

know [his] biological family" and because Child should know that Father "did not abandon him." *Id*. at 42.

[12] The trial court issued an order in which it found that Father "failed to file an objection or motion to contest the adoption within the statutory timeframe" and as such, that Father's "consent is irrevocably implied[.]" *Id*. at 45. The court then took the matter of the Child's best interests under advisement. After Stepfather filed a motion to waive the formal home study, which motion the court granted, the court issued its adoption decree granting Stepfather's petition to adopt Child. This appeal ensued.

## Discussion and Decision

### Issue One: Father's Consent

[13] Father first contends that the trial court abused its discretion when it reconsidered its initial ruling that his consent was not irrevocably implied and ultimately found that it was. "Our standard of review in evaluating a trial court's reconsideration of its prior ruling is abuse of discretion. An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it." *Celadon Trucking Servs., Inc. v. United Equip. Leasing, LLC*, 10 N.E.3d 91, 94 (Ind. Ct. App. 2014) (quotation marks and citations omitted).

[14] Here, Stepfather filed a motion in which he asked the court to determine that Father's consent was irrevocably implied after Father failed to contest the

adoption within thirty days. In a docket entry with no corresponding explanation, the court noted that Stepfather's motion "shall be denied." Appellant's App. Vol. 2 at 4. Then, following a rather lengthy passage of time, a change of judge, and a hearing, the trial court issued a new order finding that Father's consent was irrevocably implied. Despite Father's arguments to the contrary, we cannot say that change constituted an abuse of discretion.

[15] Indiana Code Section 31-19-9-18(b)(1) (2018) provides that the "consent of a person who is served with notice . . . to [an] adoption is irrevocably implied without further court action" if the person "fails to file a motion to contest the adoption . . . not later than thirty days after service of notice[.]"[2] That statute is clear. Father only had thirty days from the time he received service of the adoption notice to file his motion to contest. Father received notice on October 2, 2019, but did not contest the adoption or take any action related to the adoption proceedings until he filed a motion for a change of judge in September 2023, well outside of the thirty-day deadline.

[16] Still, Father contends that the court should not find that his consent was irrevocably implied because he "demonstrated a continued intention to attempt to maintain his relationship with [Child]" and because Mother and Stepfather "intended to continue to accept child support from" him. Appellant's Br. at 19. He also maintains that he was unable to afford an attorney. In other words,

---

[2] The statute has since been amended, and the timeframe in which a party must contest the adoption has been reduced to fifteen days. *See* Ind. Code § 31-19-9-18 (2024).

Father asserts that the specific facts of his case should allow for equitable deviation from the statute. However, this Court has previously rejected a similar argument. Indeed, in *B.M. v. J.R. (In re Adoption of K.M.)*, this Court held that the "language of the statute imposes a condition precedent to the enforcement of a right, i.e., the filing of a motion to contest a petition for adoption. If the condition precedent is not met, the right of action is lost and the adoption may not be challenged." 31 N.E.3d 533, 538 (Ind. Ct. App. 2015). Thus, this Court found that the statute "is a nonclaim statute" and that a party "is not entitled to equitable deviation from the thirty-day time limit and courts are not permitted to utilize equity to rectify an injustice even if warranted by the situation." *Id*.[3]

[17] We acknowledge that Father believed that the adoption had already been granted when he received a copy of Stepfather's petition and the accompanying notice from the court. And we acknowledge that Father was of limited means to hire an attorney. But that does not relieve Father of the burden imposed under the statute to file his response within thirty days.[4] Because the statute is unambiguous and imposes a bright-line rule, Father's consent was irrevocably implied when he failed to respond within thirty days. As such, we cannot say

---

[3] We decline Father's request to "revisit[]" our holding in *In re Adoption of K.T.* As Father appears to acknowledge, in order for him to raise equitable defenses, the statute must be amended—a task that falls to the Indiana General Assembly, not this Court.

[4] We note that Father demonstrated at least a basic understanding of the court system when he filed, *pro se*, the paternity action after his relationship with Mother ended.

that the court abused its discretion when it reconsidered its prior ruling. We affirm the trial court on this issue.[5]

## Issue Two: Best Interests

Father next appeals the trial court's grant of Stepfather's petition to adopt Child. Our standard of review is well settled:

> In family law matters, we generally give considerable deference to the trial court's decision because we recognize that the trial judge is in the best position to judge the facts, determine witness credibility, get a feel for the family dynamics, and get a sense of the parents and their relationship with their children. Accordingly, when reviewing an adoption case, we presume that the trial court's decision is correct, and the appellant bears the burden of rebutting this presumption.

*J.W. v. D.F. (In re E.B.F.)*, 93 N.E.3d 759, 762 (Ind. 2018) (quotation marks and citations omitted). We will not disturb the trial court's decision in an adoption proceeding unless the evidence at trial leads to but one conclusion and the trial court reached the opposite conclusion. *R.K.H. v. Morgan Cty. Ofc. of Fam. and Children (In re Adoption of M.W.)*, 845 N.E.2d 229, 238 (Ind. Ct. App. 2006). We will neither reweigh the evidence nor assess the credibility of witnesses, and we will examine only the evidence most favorable to the trial court's decision. *Id.*

---

[5] Because we affirm the trial court on this issue, we need not address Father's argument that his consent was still required because he had not failed to communicate with Child for more than one year.

[19] It is well settled that, "[e]ven if a court determines that a natural parent's consent is not required for an adoption, the court must still determine whether adoption is in the child's best interests." *N.R. v. K.G. and C.G. (In re Adoption of O.R.)*, 16 N.E.3d 965, 974 (Ind. 2014). On appeal, Father contends that the court erred when it granted the adoption because it was not in Child's best interests. In particular, Father asserts that "there have been no allegations against [him] for violence, drug, or controlled substance use"; he "has provided a stable home for his six other children[] and has regular parenting time with a seventh"; and he is "able to financially support his family[.]" Appellant's Br. at 27. And he maintains that, by granting the adoption, "[Child] is denied a relationship" with his siblings and grandparents. *Id*.

[20] However, Father's argument on appeal is simply a request for this Court to reweigh the evidence, which we cannot do. Rather, the evidence demonstrates that, at best, Father has not seen Child or had any "calls [or] anything like that" with Child in seven years. Tr. at 85. The evidence also shows that Child has lived with Stepfather since 2016, that Child has a "great" relationship with Stepfather, that Child has "a bond" with Stepfather's family, and that Child has a stable life with Mother and Stepfather. *Id*. at 65, 67. Further, Child refers to Stepfather as "dad." *Id*. at 86. Stepfather also testified that Child is doing well in school and socially.

[21] We cannot say that "the evidence at trial leads to but one conclusion and the trial court reached the opposite conclusion." *In re Adoption of M.W.*, 845 N.E.2d

at 238. As such, the trial court did not abuse its discretion when it found that the adoption of Child by Stepfather was in Child's best interests.

## Conclusion

[22] The trial court did not abuse its discretion when it revised its prior order and ultimately determined that Father's consent to the adoption was irrevocably implied. And the court did not abuse its discretion when it found that the adoption was in Child's best interests. We therefore affirm the trial court.

[23] Affirmed.

Altice, C.J., and Mathias, J., concur.

ATTORNEY FOR APPELLANT

Aaron J. Spolarich
Bennett Boehning & Clary, LLP
Lafayette, Indiana

ATTORNEY FOR APPELLEE

Litany A. Pyle
Crawfordsville, Indiana