# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 11 2020, 8:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Yvette M. LaPlante
LaPlante LLP
Evansville, Indiana

ATTORNEY FOR APPELLEE

Jeff Shoulders
Bob Zoss Law Office
Evansville, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re of the Adoption of Z.F. (Minor Child), | September 11, 2020 |
| K.F., | Court of Appeals Case No. 20A-AD-362 |
| *Appellant*, | Appeal from the Vanderburgh Superior Court |
| v. | The Honorable Brett J. Niemeier, Judge |
| A.F., | Trial Court Cause No. 82D04-1907-AD-72 |
| *Appellee*. | |

**Brown, Judge.**

[1] K.F. appeals from the trial court's decree of adoption. We affirm in part, reverse in part, and remand.

## Facts and Procedural History

[2] Z.F. was born to K.F. and L.F. ("Father") in April 2007. In December 2007, the trial court issued an order establishing paternity which awarded K.F. custody and ordered Father to pay $111 per week in child support. On June 20, 2013, the court issued an order granting a petition to modify custody filed by Father. The order provided that Father have primary physical custody of Z.F., K.F. have parenting time pursuant to the Indiana Parenting Time Guidelines, and that K.F. pay $51 dollars per week in child support.[1] K.F. made payments of $153 in March 2014, $100 in August 2014, and $100 in September 2014.

[3] On June 20, 2017, the court issued an order stating that it was in Z.F.'s best interest that K.F.'s parenting time be modified and exercised at Father's discretion. The order also stated the court found K.F. in contempt for continual nonpayment of child support. A court entry dated February 1, 2018, stated that K.F. shall exercise one midweek supervised visit and a supervised visit every other Saturday, that K.F. had a child support arrearage of $9,149.67 and an arrearage for her portion of non-covered medical expenses of $1,792.49, and

---

[1] The child support obligation worksheet attached to the court's order included a weekly gross income for K.F. of $290, and the order stated she had the capacity to work full time at minimum wage. According to counsel for A.F., Father's spouse, "payments were to begin in 2014 after the credit." Transcript Volume II at 14. When asked, "[a]t about 54.2 weeks, approximately, that credit for the approximately $2,700.00 that [Father] owed you was, for lack of a better term, eaten up or used up and then you were supposed to start paying your support," K.F. answered affirmatively. *Id*. at 14-15.

that she was ordered to pay $1,000 in attorney fees.[2] An entry dated June 6, 2018, stated in part that, "[b]ecause [K.F.] has missed parenting time and, on occasion, has failed to communicate with Father about her missed parenting time, the Court will impose the requirement that [K.F.] will confirm with Father 48 hours in advance of any scheduled parenting time that she will be exercising the parenting time." Petitioner's Exhibit F at 2. The entry further stated K.F.'s child support arrearage had increased to $10,067.67, she still had an arrearage for her portion of non-covered medical expenses of $1,792.49, and she had not paid the attorney fees as previously ordered. It stated that the court entered judgment against K.F. in favor of Father and that he would have a lien against K.F.'s back disability payments received from her disability claim.

[4] On July 18, 2019, A.F. filed a Petition for Step-Parent Adoption stating she was married to Father and was petitioning to adopt Z.F. On the same day, Father filed a consent to the adoption. On August 16, 2019, K.F. filed a motion to contest the adoption, and on November 4, 2019, she made a child support payment of $60.

[5] On November 20, 2019, the trial court held a hearing at which it stated "we're here for a consent hearing." Transcript Volume II at 5. The juvenile child support clerk testified that K.F. made no child support payments for the period

---

[2] The entry stated: "The Court acknowledges that [K.F.] is in contempt, but does not enter an Order indicating the same. However, the Court orders [K.F.] to pay $1,000 of the Father's attorney fees . . . within six (6) months of this order." Petitioner's Exhibit D at 3.

of five years and two months between September of 2014 and November 2019. K.F. testified that she was working at McDonald's in 2013 and 2014, earning $7.35 per hour, and her rent was $525. She testified she had custody of a child who was seventeen years old, and the child's father was $25,000 behind in child support. She testified Z.F. was born after the wreck and she had been advised not to have him. She testified that, in 2015, she slipped on ice and injured herself. She stated: "I was advised to reapply for social security because I already had done it twice before. But it was denied. I missed an appointment the first time it was denied and the second time it was denied is when I was working at McDonald's and my income was too high. Well, I didn't make too much money, there was an incident at work and I got a lawyer and the matter's been resolved and dismissed and McDonald's had to give me money." *Id.* at 18. She indicated she received a settlement from McDonald's of $10,000, and when asked how much of the payment she applied toward child support for Z.F., she testified: "None. I bought a vehicle and then it died. I fixed it and that's where that money went. The entire check went to getting a vehicle." *Id.*

[6] K.F. testified she currently worked at Arby's, had worked there since July, and earned $8.50 per hour. She indicated she worked at Long John Silver's in November 2018 and quit after a month, she started at Cracker Barrel in February 2019 but received only eleven hours a week, and in July she quit and started working at Arby's. She indicated she worked forty hours a week when she worked at McDonald's. She also indicated she smoked about half a pack of cigarettes a day and had done so for a number of years. When asked how she

supported half a pack a day, she answered "I can support myself now and I'm also on the nicotine patch now," "before I would do side work or my Mom would buy them," and "[w]hen you don't have a job you're not supporting nothing." *Id*. at 24. She indicated she paid thirty-five dollars a month for her cell phone.

[7] K.F. testified she and her daughter lived in a house with her brother and his girlfriend, she did not pay him rent, she sometimes paid the utility bills, and she had given her brother about eighty-five dollars. She indicated she was not working in February, May, or June of 2018. She also testified that she previously lived with her mother and her boyfriend. When asked how many years she had not had a housing expense, K.F. testified "it's been six years." *Id*. at 53.

[8] On cross-examination, K.F. Testified she had paid $1,000 for Zo.F., her seventeen-year-old daughter, to take a trip when her daughter was a freshman, and on redirect acknowledged that during this time she was paying no support for Z.F.

[9] K.F.'s counsel addressed the court: "My next questions go to best interest. Has the Court previously ruled that I cannot introduce any best interest evidence?" *Id*. at 63-64. The court replied: "Correct. We'll show that over your objection." *Id*. at 64. K.F.'s counsel then stated: "Then the remainder of my questions will be concluded." *Id*.

Zo.F. testified that K.F. attempted to support and provide care for Z.F. and that "we go over there and usually we play games because he enjoys that," "sometimes [K.F.] goes and gets new cards or something," "she knows what kind of drinks he likes so she brings drinks over there for him when we come and visit," and "she buys him clothes and if he happens to want something, like a new game or really anything, food, whatever, she makes sure to try her best to give that to him." *Id.* at 37-38. She indicated K.F. brought snacks when she visited Z.F. and that she visited him regularly each month. She stated K.F. bought an Xbox in 2016 for Z.F. to use when he visited and that he had not visited in over two years.

On December 4, 2019, the court entered an order finding that K.F.'s consent to the adoption was not necessary. The court found:

> 4. Petitioner [A.F.] claims the mother's consent is unnecessary as she has failed to financially support her son for a period of at least one year even though she had the means to assist in support.
>
> 5. The mother [K.F.] failed to pay any child support for her son after 9-2-14 through the time that the Petition to Adopt was filed on 7-18-19.
>
> 6. After the Petition was filed the mother has made one token payment of $60.00.
>
> 7. The mother admitted that in 2015, she received a $10,000 award for being injured at McDonalds, but failed to pay any support to her child with this money; instead she purchased a car.
>
> 8. The mother admits she smokes cigarettes, which by the Court's calculations amounts to over $50 a month.
>
> 9. The mother admits that she rarely pays rent or utilities as she has been living for an extended period of time with other family members.

10. The mother admits to sending her other daughter to New York for a performance, during this time period of nonsupport, which cost approximately $1000.

11. The mother admits at various times over the last five years she worked, including full time, but she "had to make a choice" and choose not to pay support due to her needs.

12. On 6-20-17, the mother was found in contempt for failing to pay child support, but continued to fail to pay support.

13. On 2-1-18, the mother was found by a Court to owe over $9000 in back child support and $1792 in medical expenses, but continued to fail to pay support.

14. On 6-6-18, the mother was found by a Court to owe over $10,000 in back child support and $1792 in non-covered medical expenses, but continued to fail to pay support for the next year.

15. The Court acknowledges that the mother is due a tremendous amount of back support from her other child's father, but one parent's failure to pay doesn't excuse another parent's failure to pay when they still have the means to do so. Zero payments for years, even after a court order, without any attempt to even pay small amounts which were owed, is clearly a failure to support a child.

16. Indiana law in accordance with IC 31-19-9-8 requires a parent to support their child . . . .

17. The Court finds the mother did not support her child for over one year, when she had the means to do so, thus her consent to adopt is unnecessary and the stepmother can continue to proceed in this matter.

Appellant's Appendix Volume II at 11-12.

[12]     On January 27, 2020, K.F. filed a Motion for Evidentiary Hearing on Best Interests. On January 30, 2020, the court held a hearing.[3] Near the beginning of the hearing, K.F.'s counsel stated that a "Petition for Hearing on the issue of best interest" had been previously filed and that she had been "informed by the Court that the Court does not feel that is necessary at this time, given the Court's earlier ruling in this matter," and the court replied "Correct." Transcript Volume II at 75. K.F.'s counsel stated that, as an offer to prove, K.F. would have testified, if she were allowed to have a hearing, that she has had continuing visits with Z.F., she is financially unable to pay support, she has a bond with Z.F., there is no danger to him, and she feels it is in his best interest that the bond not be cut by way of adoption. The court stated:

> Well and the statute calls basically if the Court finds that consent is not necessary then we go forward with the adoption. Of [sic] consent is necessary then we go to a best interest as to whether the child should be adopted or not. So that is the reason we are not holding a best interest hearing, is because the Court has already decided [K.F.'s] consent is unnecessary. And so that is the reason for that. The Court has appointed the Public Defender['s] Office to represent [K.F.] for the purposes of appealing this adoption.

*Id*. at 76.

---

[3] The transcript of the January 30, 2020 hearing is less than five pages, and the transcript of A.F.'s testimony is less than two pages.

[13]    Upon questioning by her counsel, A.F. testified that she lived with Father, her daughter, and Z.F., she was employed as a registered nurse, Father was employed as an occupational therapy assistant, and she had a comfortable home and adequate accommodations to care for Z.F. When asked if she believed it was in Z.F.'s best interest that the adoption take place, she responded affirmatively. The court stated that the petition for adoption was granted. It entered a decree of adoption which stated a Motion to Waive Home Study had been granted, the court heard evidence in support of the petition for adoption, Father had signed and filed a consent to the adoption, the allegations contained in the petition for adoption were true, and the petition should be granted.

## Discussion

[14]    K.F. claims that the evidence did not establish she had the ability to pay support and that the decree of adoption did not satisfy statutory requirements. In family law matters, we generally give considerable deference to the trial court's decision because we recognize that the trial judge is in the best position to judge the facts, determine witness credibility, and obtain a feel for the family dynamics and a sense of the parents and their relationship with their children. *E.B.F. v. D.F.*, 93 N.E.3d 759, 762 (Ind. 2018). Accordingly, when reviewing an adoption case, we presume that the trial court's decision is correct, and the appellant bears the burden of rebutting this presumption. *Id.*

[15]    When reviewing the trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to but one conclusion and the trial

judge reached an opposite conclusion. *In re Adoption of T.L.*, 4 N.E.3d 658, 662 (Ind. 2014). The trial court's findings and judgment will be set aside only if they are clearly erroneous. *E.B.F.*, 93 N.E.3d at 762. A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* We will not reweigh evidence or assess the credibility of witnesses. *Id.* Rather, we examine the evidence in the light most favorable to the trial court's decision. *Id.*

A. *Ability to Pay*

[16] K.F. argues the trial court's findings did not address her ability to pay, the court addressed her expenses but not her income, her child support obligation was based on imputed income, and her ability to pay should be based on her actual income, and that, when she was making money, she made very little. She argues she brought snacks to her visitations with Z.F., supported a seventeen-year-old, purchased old vehicles, and obtained food from a food bank. She argues she received her settlement money before she had a significant arrearage, the purchase of a vehicle using the settlement money in her situation was not a frivolous or unnecessary expenditure, and the facts she smokes cigarettes and does not pay rent do not mean she had the ability to pay. A.F. responds that K.F. made no child support payments for over five years and during that time received a settlement, held employment, and had no housing expenses. She asserts K.F. asks this Court to reweigh the evidence.

[17] Ind. Code § 31-19-11-1 provides in part that the trial court shall grant a petition for adoption if it hears evidence and finds in part that the adoption requested is in the best interest of the child and "proper consent, if consent is necessary, to the adoption has been given." A petition to adopt a child may be granted only if written consent to adoption has been executed by the mother. *See* Ind. Code § 31-19-9-1. However, Ind. Code § 31-19-9-8(a) provides that consent to adoption is not required from:

> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>
> * * * * *
>
> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

If a petition for adoption alleges that a parent's consent to adoption is unnecessary under Ind. Code § 31-19-9-8(a)(2) and the parent files a motion to contest the adoption, the petitioner for adoption has the burden of proving that the parent's consent to the adoption is unnecessary under Ind. Code § 31-19-9-8. Ind. Code § 31-19-10-1.2(a). Ind. Code § 31-19-10-0.5 provides: "The party bearing the burden of proof in a proceeding under this chapter must prove the party's case by clear and convincing evidence."

[18] The clear and convincing evidence standard is an intermediate standard of proof greater than a preponderance of the evidence and less than proof beyond a reasonable doubt. *See T.D. v. Eskenazi Health Midtown Cmty. Mental Health Ctr.*, 40 N.E.3d 507, 510 (Ind. Ct. App. 2015). In order to be clear and convincing,

the existence of a fact must be highly probable. *Id.* "The clear and convincing standard is employed in cases where the wisdom of experience has demonstrated the need for greater certainty, and where this high standard is required to sustain claims which have serious social consequences or harsh or far reaching effects on individuals." *Civil Commitment of T.K. v. Dep't of Veterans Affairs*, 27 N.E.3d 271, 276 (Ind. 2015) (citation and quotations omitted).

[19]     The trial court found that K.F. did not support Z.F. for over one year when she had the means to do so. A petitioner for adoption must show that the parent had the ability to make the payments which she failed to make. *In re Adoption of K.S.*, 980 N.E.2d 385, 388 (Ind. Ct. App. 2012). The mere showing that a parent had a regular income, standing alone, is not sufficient to indicate the parent's ability to provide support. *Id.* Rather, we have held: "To determine that ability, it is necessary to consider the totality of the circumstances. In addition to income, it is necessary to consider whether that income is steady or sporadic and what the non-custodial parent's necessary and reasonable expenses were during the period in question." *Id.* (quoting *In re Adoption of K.F.*, 935 N.E.2d 282, 288 (Ind. Ct. App. 2010), *trans. denied*).

[20]     The record reveals that, in 2013, K.F. was ordered to pay child support of $51 per week. The payment history admitted into evidence shows that she made payments of $153 in March 2014, $100 in August 2014, and $100 in September 2014. After the petition for adoption was filed on July 18, 2019, and prior to the November 20, 2019 hearing, K.F. made one support payment of $60 on November 4, 2019. The record supports the trial court's finding that K.F. failed

to pay any child support after September 2014 through the date of the petition for adoption and that, after the petition was filed, she made one token payment. The record further reveals an order was issued on June 20, 2017, finding K.F. in contempt for nonpayment of child support; an entry was made on February 1, 2018, stating her child support arrearage was $9,149.67 and her medical expense arrearage was $1,792.49 and ordering her to pay attorney fees; and an entry on June 6, 2018, stated her child support arrearage had increased to $10,067.67. While K.F. was not always employed and had minimal hours and earnings at times, the record supports the conclusion that she was able to provide some level of support and knowingly failed to do so. She was employed on full-time and part-time bases for various periods, received a settlement, and had minimal housing expenses for an extended period.

[21] The trial court was in the best position to judge the facts, and we will not reweigh evidence or assess the credibility of the witnesses. Based upon the record, we do not disturb the trial court's determination that K.F.'s consent to the adoption is not required. *See In re Adoption of K.F.*, 935 N.E.2d at 288 (affirming the trial court's finding the mother had the ability to pay but failed to pay child support for at least one year and observing that, while the mother struggled to maintain employment and was mostly unemployed, she was held in contempt three times for failure to pay child support, the record did not show she ever petitioned to modify her support obligation, and she had a significant arrearage of over $14,000 where her support obligation was $47 per week).

B. *Best Interest and Decree of Adoption*

[22] K.F. also maintains the decree of adoption does not satisfy the requirements of Ind. Code § 31-19-11-1. Ind. Code § 31-19-11-1(a) provides:

> Whenever the court has heard the evidence and finds that:
>
> (1) the adoption requested is in the best interest of the child;
>
> (2) the petitioner or petitioners for adoption are of sufficient ability to rear the child and furnish suitable support and education;
>
> (3) the report of the investigation and recommendation under IC 31-19-8-5 has been filed;
>
> (4) the attorney or agency arranging an adoption has filed with the court an affidavit prepared by the state department of health under IC 31-19-5-16 indicating whether a man is entitled to notice of the adoption because the man has registered with the putative father registry in accordance with IC 31-19-5;
>
> (5) proper notice arising under subdivision (4), if notice is necessary, of the adoption has been given;
>
> (6) the attorney or agency has filed with the court an affidavit prepared by the state department of health under:
>
> > (A) IC 31-19-6 indicating whether a record of a paternity determination; or
> >
> > (B) IC 16-37-2-2(g) indicating whether a paternity affidavit executed under IC 16-37-2-2.1;
>
> has been filed in relation to the child;
>
> (7) proper consent, if consent is necessary, to the adoption has been given;

(8) the petitioner for adoption is not prohibited from adopting the child as the result of an inappropriate criminal history described in subsection (c) or (d); and

(9) the person, licensed child placing agency, or local office that has placed the child for adoption has provided the documents and other information required under IC 31-19-17 to the prospective adoptive parents;

the court shall grant the petition for adoption and enter an adoption decree.

[23] K.F. argues that the trial court made no findings and heard no evidence with respect to subsections (1) and (2) of Ind. Code § 31-19-11-1(a) and that it did not make findings, although evidence exists in the record, with respect to subsections (3), (4), (6), (7), (8), and (9) of the statute. She argues, "[m]ore disturbingly, evidence regarding the child's best interest and [A.F.'s] ability to provide is completely absent from the record." Appellant's Brief at 19. A.F. responds that her January 30, 2020 testimony was sufficient and that K.F. admits evidence in the record satisfied the requirements of subsections (3) through (9) of the statute.

[24] The Indiana Supreme Court has held that, even if a court determines that a natural parent's consent is not required for an adoption, the court must still determine whether adoption is in the child's best interests. *In re Adoption of O.R.*, 16 N.E.3d 965, 974 (Ind. 2014).

[25] In *In re Adoption of K.S.*, this Court concluded that the mother's consent to the adoption of her child by the stepmother was not required on the basis that she

had the ability to financially support the child and willfully failed to do so.  980 N.E.2d at 388-390.  We then turned to the adoption statutes and observed:

> Nevertheless, we are mindful that a petition for adoption is not automatically granted following a showing that a natural parent failed to provide support when able to do so.  Once the statutory requirements are met, the court may then look to the arrangement which will be in the best interest of the child.  The purpose of Indiana's adoption statutes is to protect and promote the welfare of children by providing them with stable family units.  On occasion we have observed that the relationship between parent and child is a bundle of human rights of such fundamental importance that adoption statutes, being in derogation of the common law, should be strictly construed in favor of a worthy parent and the preservation of such relationship.  However, in evaluating the parent-child relationship, the best interest of the child is paramount and our main concern should lie with the effect of the adoption on the reality of the minor child's life.

*Id.* at 389 (citations omitted).

This Court in *In re Adoption of K.S.* then reviewed the record and held:

> During the instant proceedings, the parties and the trial court focused on the statutory requirements to waive [the mother's] consent to the adoption of [the child] by [the stepmother].  Specifically, the trial court noted on the record "the only issue today is consent.  [] so, we'll solve that today and then decide where we go from there."  The parties did not present any evidence with regard to the impact of the adoption on [the child's] life and whether the severance of her ties with [the mother] would be in [the child's] best interest.  Therefore, we remand to the trial court to determine whether the adoption will be in [the child's] best interest.  *See* I.C. § 31-19-11-1(a).

\* \* \* \* \*

> Based on the foregoing, we conclude that [the mother's] consent to the adoption of her minor child by [the stepmother] was not required. However, we remand for further proceedings to determine whether the adoption is in [the child's] best interest.

*Id.* at 389-390 (some citations omitted).

[27] Here, we cannot conclude that the trial court considered or permitted the parties to present evidence regarding the impact of the adoption on Z.F.'s life and whether the severance of his ties with K.F. would be in his best interest, nor can we say it considered whether A.F. is of sufficient ability to rear Z.F. and furnish suitable support and education. *See* Ind. Code § 31-19-11-1(a)(1) and (2). While A.F. indicated that she and Father were employed and had a home, the trial court expressly stated that it did not believe a hearing on the issue of best interest was necessary given its previous ruling that K.F.'s consent was not required. The court stated, "the reason we are not holding a best interest hearing, is because the Court has already decided [K.F.'s] consent is unnecessary." *Id.* at 76. The court did not hear evidence from K.F., and K.F.'s counsel stated that, if K.F. were allowed to testify, she would have testified that she had continuing visits and a bond with Z.F. and that it was in Z.F.'s best interest that the bond not be severed.

[28] Remand is necessary to determine whether the adoption of Z.F. by A.F. is in Z.F.'s best interest and whether A.F. is of sufficient ability to rear Z.F. and furnish suitable support and education. *See* Ind. Code § 31-19-11-1(a); *In re Adoption of K.S.*, 980 N.E.2d at 389-390. If the court determines on remand that the adoption is in Z.F.'s best interest and A.F. is of sufficient ability to rear Z.F.

and furnish suitable support and education, it should also determine whether each of the other requirements of Ind. Code § 31-19-11-1 is satisfied.

## *Conclusion*

[29]    Based on the foregoing, we affirm the trial court's determination that K.F.'s consent to the adoption of Z.F. was not required. However, we remand for further proceedings to determine whether the adoption by A.F. is in Z.F.'s best interest and for other findings consistent with this opinion.

[30]    Affirmed in part, reversed in part, and remanded for further proceedings.

Robb, J., and Crone, J., concur.