## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 18 2020, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANTS | ATTORNEY FOR APPELLEE |
|---|---|
| Elden E. Stoops, Jr. | Antony Garza |
| North Manchester, Indiana | Warsaw, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Adoption of K.D.D., Minor Child, | December 18, 2020 |
| K.H. and S.H. | Court of Appeals Case No. 19A-AD-2496 |
| *Appellants-Petitioners,* | Appeal from the Kosciusko Circuit Court |
| v. | The Honorable Michael W. Reed, Judge |
| G.D., | Trial Court Cause No. 43C01-1806-AD-18 |
| *Appellee-Respondent.* | |

**Altice, Judge.**

## Case Summary

[1]     K.H. (Stepfather) and S.H. (Mother) appeal the trial court's denial of their request to waive the parental consent of G.D. (Father) to Stepfather's adoption

of minor child, K.D.D. (Child). They raise one issue: Did the trial court err when it determined that Father's consent was required?

[2] We affirm.

## Facts & Procedural History

[3] Child was born to Mother and Father in June 2012. Their marriage was dissolved in June 2016. Pursuant to the dissolution decree, Mother was awarded physical custody of Child, with Father exercising parenting time on alternating weekends as well as during the week; neither party owed child support to the other. Mother, Child, and Stepfather began residing together in May 2014, and have continued to do so since that time.[1]

[4] In 2017, "issues" pertaining to Father's involvement with and use of drugs resulted in an April 2017 agreed court order modifying Father's parenting time. *Transcript* at 9. Father was permitted to exercise parenting time from 10 a.m. to 6 p.m. on Saturdays and Sundays on alternating weekends, but not overnight, in addition to Wednesday evenings. The April 2017 order also provided: "[E]ach party shall submit to drug testing immediately upon a request from the other party. The requesting party will pay for said testing and will be reimbursed for a failed test by the other party." *Appellant's Appendix* at 21.

---

[1] It is not clear in the record as to when they married.

Thereafter, Father, for the most part, regularly exercised parenting time with Child, although there were periods when it was sporadic.

At some point in mid-2017, Mother filed a motion seeking to modify Father's parenting time further, and a hearing was held on August 10, 2017, at which Father did not appear. Two days later, Father exercised parenting time with Child. In October 2017, the court issued its order related to the August hearing, stating that Father was to have no parenting time absent a specific agreement between Mother and Father or an order of the court. Father was ordered to pay $51 per week in child support, and the requirement that each party submit to a drug test immediately upon a request from the other party continued in effect.

On June 27, 2018, co-petitioners Stepfather and Mother filed a petition seeking for Stepfather to adopt Child. They alleged that Father "has had no contact with the minor child, since on or about August 12, 2017, and he is unfit to exercise either parental rights or visitation and therefore his consent is not required." *Id.* at 9. Mother consented to the adoption. Father objected to the adoption, and counsel was appointed for him.

In January 2018, Father was charged with eight drug-related offenses, and in September 2018, Father was convicted, pursuant to a guilty plea, of Level 2 felony dealing in methamphetamine and Level 3 dealing in a narcotic drug. He received a sentence of seventeen and one-half years for the dealing in methamphetamine conviction and a suspended five-year sentence for the dealing in a narcotic drug conviction, with the two sentences to run

consecutively. The order indicated that the court would consider a modification of sentence upon Father's successful completion of a clinically appropriate substance abuse treatment program as determined by the Indiana Department of Correction.

[8] On May 16, 2019, the court held a hearing on Stepfather and Mother's motion to waive Father's parental consent to adoption. Their position was that Father's consent should be waived because (1) Father failed without justifiable cause to significantly communicate with Child, (2) failed to support Child, and (2) is unfit to be a parent to Child.

[9] Mother testified that, during the summer before the August 2017 hearing, Father was generally exercising parenting time on Wednesday evenings and on alternating Saturdays and Sundays from 10 a.m. to 6 p.m. Father last did so on August 12, 2017. Mother testified that at that time she asked Father to take a drug test and he did not do so. She stated the only means of communication between her and Father was Facebook Messenger and that she "kept asking him to take drug tests." *Transcript* at 23. She testified that, on occasions after the August hearing, Father asked to see or talk to Child but that she did not allow it because he refused to take a drug test when she asked. She stated that Father's mother and sisters regularly spent time with Child, that she never refused their requests or put limitations on how often they could see Child, and that she "absolutely" would have allowed Father to visit with Child if he had taken and passed the drug tests. *Id.* at 33.

[10]     On cross-examination, Mother confirmed that, when she asked Father via Facebook Messenger to take a drug test, he did not expressly refuse the tests, but rather, he never answered, which she considered as a refusal. She acknowledged that she got a new cell phone in December 2018 and that Father did not have her new number. Mother estimated that, after the October 2017 order, Father contacted her via Facebook Messenger approximately once per month asking about Child. She explained that she did not respond "[b]ecause he was not taking drug tests as I asked." *Id*. at 28. Mother acknowledged that Father had asked to bring Christmas gifts to Child,[2] but she told him he could mail them "because he was ordered to have no visitation." *Id*. at 27. Although she had abused drugs in the past, Mother indicated that she had remained clean since Child was born. She agreed that having a history of drug abuse does not necessarily make one an unfit parent. As to child support, Mother stated that she received none from Father, though she believed he was capable of working.

[11]     Father testified that his current release date from incarceration is 2031 but that he is on the waiting list for the Recovery While Incarcerated program. He said that he exercised his allotted parenting time with Child on weekends and weeknights, providing food, shelter, and clothes, until August 2017 "when she wouldn't let me see him no more." *Id.* at 44. He testified to trying to reach Child through Mother on six or seven occasions but "was told no" multiple

---

[2] Although Mother indicated in her testimony that Father's request to bring gifts was in December of 2018, we note Father had been sentenced in his criminal case in September 2018; thus, it appears that the year in which Father asked to bring the gifts to Child was 2017.

times and sometimes did not get a response. *Id*. Father stated that Mother never asked him to take a drug test after August 12, 2017. Father testified that, after being incarcerated, he sent two letters to Child at Mother's current address but never received any response. Father stated that he did not attend the August 2017 hearing because his lawyer had told him he did not need to, as it was "supposed to be just for the lawyers and the judge." *Id*. at 46. When asked if he had been paying any child support, he replied, "No, I didn't know I was supposed to pay support or anything. This is the first I've knew, known about it." *Id*. On rebuttal, Mother stated that she had received no letters for Child from Father. She noted that, because Father's mother often sees Child, she could have personally given Father's Christmas gifts to Child if he desired.

[12] On August 15, 2019, the court issued an order denying Stepfather and Mother's request to waive Father's consent, finding:

> 3. The Petitioners failed to establish that [Father] failed, without justifiable cause, to communicate significantly with [Child] when able to do so. The evidence also shows that [Mother] hampered and/or thwarted [Father]'s attempts to communicate and exercise parenting time with [Child].
>
> 4. The Petitioners failed to establish that [Father] knowingly failed to provide for the care and support of [Child] when able to do so as required by law or judicial decree. The evidence failed to establish that [Father] had the ability to pay support as ordered, and that he knowingly failed to do so, and/or that any such failure to pay support was willful.

5. The Petitioners failed to show that [Father] is an unfit parent. The evidence does show that [Father] will be unable to fulfill his obligations as a father significantly in the future, however, this inability is due to his incarceration and is not because of his unfitness.

*Appellant's Appendix* at 12. Stepfather and Mother filed a motion to correct error, which the court denied. On April 24, 2020, the trial court certified its August 15, 2019 order as a final appealable order, and on July 9, 2020, this court granted Stepfather and Mother's motion to accept a belated notice of appeal.

# Discussion & Decision

[13] In family law matters, we generally give considerable deference to the trial court's decision because we recognize that the trial judge is in the best position to judge the facts, determine witness credibility, and obtain a feel for the family dynamics and a sense of the parents and their relationship with their children. *In re Adoption of E.B.F. v. D.F.*, 93 N.E.3d 759, 767 (Ind. 2018). "The relationship between parent and child is of such fundamental importance that adoption statutes, being in derogation of the common law, are 'strictly construed in favor of a worthy parent and the preservation of such relationship.'" *In re Adoption of D.H.*, 135 N.E.3d 914, 919 (Ind. Ct. App. 2019) (quoting *In re Adoption of K.F.*, 935 N.E.2d 282, 289 (Ind. Ct. App. 2010), *trans. denied*). In evaluating the parent-child relationship, however, the best interest of the child is paramount, and "our main concern should lie with the effect of the adoption on the reality of the minor child's life." *Id.*

[14]     When reviewing a trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion. *In re Adoption of M.A.S.*, 815 N.E.2d 216, 218-19 (Ind. Ct. App. 2004). We will not reweigh the evidence but instead will examine the evidence most favorable to the trial court's decision together with reasonable inferences drawn therefrom to determine whether sufficient evidence exists to sustain the decision. *Id.* The trial court's findings and judgment will be set aside only if they are clearly erroneous. *E.B.F.*, 93 N.E.3d at 762. A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* We presume that the trial court's decision is correct, and the appellant bears the burden of rebutting this presumption. *Id.*

[15]     Initially, we address the applicable burden of proof in this case. Here, in its order denying Stepfather and Mother's request to waive consent, the trial court stated that "Petitioners must establish by clear, cogent, indubitable evidence that one or more of the statutory criteria have been met." *Appellant's Appendix* at 12. Stepfather asserts, and Father concedes, that this is not the correct standard. That is, although the "clear, cogent, and indubitable evidence" standard was previously utilized by Indiana courts, this court has clarified that one now seeking to show that a parent's consent is not required must prove the necessary requirements by clear and convincing evidence. *See M.A.S.*, 815 N.E.2d at 219; *see also* Ind. Code § 31-19-10-0.5 (providing that in a contested adoption "[t]he party bearing the burden of proof in a proceeding under this

chapter must prove the party's case by clear and convincing evidence"). The clear and convincing evidence standard is an intermediate standard of proof greater than a preponderance of the evidence and less than proof beyond a reasonable doubt. *K.H. v. M.M.*, 151 N.E.3d 1259, 1267 (Ind. Ct. App. 2020). To be clear and convincing, the existence of a fact must be highly probable. *Id*.

[16] Stepfather and Mother urge that because the trial court applied the wrong standard – a more rigorous standard[3] and "too heavy of a burden" on them – we must reverse and remand for the trial court to re-evaluate the evidence under the proper standard. *Appellant's Brief* at 15. However, we do not find that remand is necessary because, based on the trial court's findings, we are confident that it would have reached the same result by applying the clear and convincing standard.

[17] Turning to the merits of the issue at hand, Ind. Code § 31-19-11-1 provides in part that the trial court shall grant a petition for adoption if it hears evidence and finds in part that the adoption requested is in the best interest of the child and "proper consent, if consent is necessary, to the adoption has been given." Generally, in Indiana, a petition for adoption of a child who is less than eighteen years of age and born in wedlock requires written consent from each living parent. I.C. § 31-19-9-1. "Parental consent may, however, be dispensed

---

[3] Our court has defined "indubitable" as "not open to question or doubt: too evident to be doubted: UNQUESTIONABLE." *In re Adoption of M.A.S.,* 815 N.E.2d 216, 219 (Ind. Ct. App. 2004) (citing *In re Augustyniak*, 505 N.E.2d 868, 870 (Ind. Ct. App. 1987), *trans. denied*). "[T]his standard appears to be even more stringent than the 'beyond a reasonable doubt' standard used in criminal trials." *Id*.

with under certain enumerated circumstances." *E.B.F.*, 93 N.E.3d at 763. Specifically, I.C. § 31-19-9-8(a) provides a number of exceptions to the consent requirement. It states, in relevant part, that consent to adoption "is not required from any of the following":

> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>
>> (A) fails without justifiable cause to communicate significantly with the child when able to do so[.]
>
> * * *
>
> (11) A parent if:
>
>> (A) a petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; and
>>
>> (B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent.

[18] Here, Stepfather and Mother assert that the trial court's decision to require Father's consent was in error because (1) Father failed "to have reasonable communication with [Child] without just cause" for over a year, and (2) due to [Father's] "general unfitness . . . as a parent." *Appellant's Brief* at 4. As stated above, the burden was on Stepfather and Mother, as the petitioners for

adoption, to prove that the requirements of I.C. § 31-19-9-8(a)(2) or (11) were satisfied by clear and convincing evidence. *See* I.C. §§ 31-19-10-0.5 and -1.2.

[19] With regard to the allegation that Father failed without justifiable cause to communicate for one year, the evidence most favorable to the trial court's decision reveals that, from Child's birth in June 2012 until August 12, 2017, Father enjoyed a presence in Child's life, exercising parenting time with Child both during the week and on alternating weekends – although without overnights starting in April 2017. His last visitation with Child was on Saturday August 12, 2017, which was less than a year before Mother and Stepfather filed their petition for adoption in June 2018. We agree with Father, that on that fact alone, the trial court's judgment was not erroneous.

[20] Moreover, Father testified that, after October 2017 – when he was permitted parenting time only by agreement of Mother or by court order – he asked Mother on six or seven occasions through Facebook Messenger to see or talk to Child and that she either refused without explanation or did not reply. Mother does not expressly dispute this, explaining that she did not allow his requests because he was not submitting to drug tests when asked. Father denied that Mother ever asked him to take a drug test after August 2017. Father asked to bring Christmas gifts to Child in December 2017, and Mother told him he could mail them.

[21] The date of Father's incarceration is not clear, but in September 2018, a trial court accepted his guilty plea to two drug-related felonies and sentenced him to

an executed term of seventeen and one-half years, subject to modification after completion of a rehabilitation program. Father testified that, after being incarcerated, he mailed two letters to Child at Mother's current and correct address; Mother testified that she never received the letters.

[22] In *E.W. v. J.W.*, 20 N.E.3d 889 (Ind. Ct. App. 2014), *trans. denied*, this court recognized that "'[e]fforts of a custodial parent to hamper or thwart communication between a parent and child are relevant in determining the ability to communicate.'" *Id.* at 896 (quoting *In re Adoption of A.K.S.*, 713 N.E.2d 896, 899 (Ind. Ct. App. 1999), *trans. denied*). The *E.W.* court held that the trial court "was correct" to consider the custodial father's efforts to thwart the mother's communication with the child and "weigh them in [m]other's favor." *Id.* at 897.

[23] Here, the record reflects discrepancies between the testimony of Father and of Mother with regard to their communications. The trial court saw and heard the witnesses and was in the best position to assess their credibility. Evidently, the court credited Father's version, finding that Mother hampered and/or thwarted Father's attempts to communicate and exercise parenting time with Child. The evidence supports a conclusion that Stepfather and Mother failed to establish by clear and convincing evidence that Father did not communicate significantly with Child for a period of one year when able to do so. *See In re Adoption of C.P.*, 130 N.E.3d 117, 122 (Ind. Ct. App. 2019) (affirming trial court's denial of stepmother's petition to adopt child and rejecting claim that mother failed to communicate with child for a year where mother, who struggled with drug

abuse, requested to see child twice in the year preceding filing of petition for adoption).

[24] We next turn to Stepfather and Mother's other claimed basis to dispense with Father's consent, namely his alleged unfitness as a parent. As this court has observed, the term "unfit" is not statutorily defined "[b]ut this court has previously defined 'unfit' as '[u]nsuitable; not adapted or qualified for a particular use or service' or '[m]orally unqualified; incompetent.'" *E.W.*, 20 N.E.3d at 894 (quoting Black's Law Dictionary 1564 (8th ed. 2004)). We have also noted that statutes concerning the termination of parental rights and adoption "strike a similar balance between the parent's rights and the child's best interests," and thus, termination cases provide guidance in determining whether a parent is "unfit." *Id.* (quoting *In re Adoption of M.L.*, 973 N.E.2d 1216, 1223 (Ind. Ct. App. 2012)). In termination cases, we consider factors such as a parent's substance abuse, mental health, willingness to follow recommended treatment, lack of insight, and instability in housing and employment, to determine whether a parent was unfit. *M.L.* 973 N.E.2d at 1223. A parent's criminal history may also be relevant to whether a parent is unfit. *Id.*

[25] Here, there was general testimony that Father used drugs, and Mother testified to having concerns over Child's safety when with Father based on stories that she heard from Father, including that his home had twice been broken into and his girlfriend attacked, all of which she suspected to be related to his involvement with drugs. She also testified that he was not employed despite

being generally capable of working. She did not testify that Father failed to care for or feed Child while Child was in his care or was generally incapable of parenting Child. She agreed that having a history of drug abuse does not, in and of itself, make one an unfit parent.

[26] To be clear, we do not minimize Mother's concerns over Father's drug use and criminal activity. However, even if we agreed that this made him unfit, Stepfather and Mother also had the burden of proving that "the best interests of the child are served if the court dispenses with the parent's consent to adoption." I.C. § 31-19-9-8(a)(11)(B). Here, while Mother testified and explained her concerns with Child being in Father's care due to the drug use, there was no direct testimony on best interests. On this record, the evidence does not establish by clear and convincing evidence that it was in Child's best interests to dispense with Father's consent based on alleged parental unfitness. We also observe that Stepfather and Mother do not present any specific argument on appeal that Child's bests interests would be served for adoption to occur.

[27] In sum, we cannot say that Stepfather and Mother have succeeded in overcoming the presumption the trial court's decision is correct or that the evidence leads to but one conclusion and the trial court reached the opposite conclusion. Accordingly, we conclude that the trial court did not err when it found that Father's consent was required before the adoption could proceed.

[28] Judgment affirmed.

Mathias, J. and Weissmann, J., concur.